UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DANIELE DREXLER                                                                                    PLAINTIFF

v.                                                                                    CIVIL ACTION NO. 3:04-CV-578-S

THE PHOENIX INSURANCE COMPANY,                                              DEFENDANTS
STATE FARM MUTUAL INSURANCE COMPANY,
and
ZURICH NORTH AMERICAN INSURANCE COMPANY
a/k/a NORTHERN INSURANCE COMPANY

### MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment by the defendants, Phoenix Insurance Company ("Phoenix"), State Farm Mutual Insurance Company ("State Farm") and Zurich North American Insurance Company ("Northern").[1] This diversity case involves the plaintiff's underinsured motorist claims against all three defendant insurance companies. For the reasons set forth below, the court will **GRANT** Phoenix's motion for summary judgment on all claims, **GRANT** State Farm's motion for summary judgment on all claims, and **DENY** Northern's motion for summary judgment on all claims. The court will discuss each motion separately.

### FACTS

On October 11, 2002, the plaintiff, Danielle Drexler ("Ms. Drexler"), was injured in an accident while riding as a passenger in a motor vehicle driven by her friend, Jamison. Ms. Drexler

---

[1] This defendant has informed the court that its name was stated incorrectly in the complaint and that the correct name is Northern Insurance Company. Therefore, the court will hereinafter refer to this defendant as "Northern."

1

suffered facial injuries consistent with trauma associated with deployment of an air bag. She also has visual acuity loss. Liability for the accident is undisputed. Jamison's insurance carrier settled with Ms. Drexler for $87,500 on a policy with a $100,000 limit.

At the time of the accident, Ms. Drexler was living in Elizabethtown, Kentucky with her paternal grandparents, John and Lydia Drexler ("grandparents").  When Ms. Drexler's parents divorced in 1992, her mother, Angela Goodall ("mother"), obtained full legal custody.  For the next 10 years, Ms. Drexler lived with her mother, visited with her father, Duwayne Drexler ("father"), approximately two times per week, and frequently visited with her grandparents.  During this time period, all parties lived in Elizabethtown.

Sometime before the accident in question, Ms. Drexler's mother remarried and decided to move to Oklahoma with her new husband.  Ms. Drexler did not want to move and she also desired to finish high school at John Hardin High School in Elizabethtown.  Therefore, on August 23, 2002, her parents entered into an Agreed Order changing custody from the mother to the father. This Order also granted legal guardianship to the grandparents.  The Order was not signed by the judge and entered by the Hardin District Court until November 1, 2002.  On September 1, the mother moved to Oklahoma and Ms. Drexler began residing with her grandparents, who lived in the John Hardin school district.  The accident occurred on October 11, while she was living with her grandparents.

The father had insurance coverage with Phoenix, the mother with State Farm and the grandparents with Northern.  Ms. Drexler has filed underinsured motorist claims against each carrier, claiming that she was covered under all policies.  She has also asserted bad faith claims, pursuant to Kentucky's Unfair Claims Settlement Practices Act, against each defendant.

## DISCUSSION

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the burden of establishing these elements *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

### *I. Underinsured Motorists Coverage*

#### *A. Phoenix's Motion for Summary Judgment*

The parties have isolated the controlling issue as whether Ms. Drexler is an insured under her father's policy with Phoenix. *See Plaintiffs' Response to Phoenix's Motion for Summary Judgment* (DN 28), p. 3. The policy provided for underinsured motorist benefits:

> We will pay damages which an "insured" is legally entitled to recover from the owner of the operator of an "underinsured motor vehicle" because of "bodily

injury":

>   1.   Sustained by an "insured"; and
>   2.   Caused by an accident . . .
>
> "Insured" as used in this endorsement means:
>
>   1.   You or any "family member".
>   2.   Any other person "occupying" "your covered auto".
>   3.   Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1 or 2 above.

*See Phoenix Motion for Summary Judgment* (DN 24)*, Exhibit Two, Underinsured Motorists Coverage*, p. 1 of 3. Thus, Ms. Drexler is entitled to these benefits only if she is an "insured," as defined in the policy. Because numbers 2 and 3 above are clearly inapplicable to this situation,[2] it becomes necessary to determine whether Ms. Drexler falls within the definition of "you" or "family member". The Phoenix policy defined these terms as follows:

> Throughout this policy, "you" and "your" refer to:
>
>   1.   The "named insured" shown in the Declarations; and
>   2.   The spouse if a resident of the same household.

*See Phoenix Motion for Summary Judgment* (DN 24)*, Exhibit Two, Automobile Policy Booklet*, p.1 of 13. In the case at bar, the father is the named insured. Therefore, "you" could refer only to the father and his current spouse. So, the ultimate issue becomes whether Ms. Drexler qualifies as a "family member" under the following definition:

> "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes ward or foster children.

---

[2] Jamison's car was not a "covered auto" under the Phoenix policy and there is no supplemental damage claim derived from the bodily injury claim of a person covered in 1 or 2.

*Id.* Ms. Drexler is certainly a blood relative of her father; however, she is not a resident of his household.

Construing an insurance contract is purely a legal inquiry. *See Morganfield Nat. Bank v. Damien Elder & Sons,* 836 S.W.2d 893, 895 (Ky. 1992). Therefore, it is particularly appropriate for a summary judgment motion. When interpreting insurance contracts, the court must give the terms "their ordinary meaning as persons with the ordinary and usual understanding would construe them." *City of Louisville v. McDonald*, 819 S.W.319, 320 (Ky. App. 1991). Citing this principle, the Kentucky Court of Appeals has held that "the term 'household' is unambiguous and easily enough understood." *Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (Ky. App. 1997). In *Sutton*, the farmowner's insurance policy at issue defined "insured" as "you or your relatives residing in your household." *See id.* As in the case at bar, the policy did not define the term household. The *Sutton* court determined the ordinary meaning of "household" to be "persons living together as a family under the same roof." *Id*. As this court sits in diversity, we must apply the law of Kentucky. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, we defer to the definition provided by the Kentucky courts in *Sutton*.

Using this definition, Ms. Drexler is not a "family member" under her father's policy. Since her parents' divorce in 1992, Ms. Drexler has never lived "under the same roof" as her father. Ms. Drexler lived with her mother until her mother relocated. *Affidavit of Daniel Drexler*, ¶2. She saw her father weekly, but she did not live "under his roof." When her mother moved to Oklahoma, Ms. Drexler began living with her grandparents. *Id.* at ¶4. She continued to visit her father but the

record is devoid of any evidence indicating that she lived in his household.[3] Ms. Drexler cites many cases from other jurisdictions for the proposition that a child of divorced parents can be a member of each parent's household. She discusses situations in which children who split equal amounts of time with each parent maintain dual residences and, thus, can be covered under two policies. *Plaintiff's Response*, p. 4-7. She cites no Kentucky case law to support her argument. Since *Sutton* controls the relevant interpretation issue, we find these opinions from other jurisdictions inapplicable. Furthermore, Ms. Drexler's argument ignores the facts of the situation at bar. Ms. Drexler did not spend equal amounts of time with each parent. There was no joint custody arrangement. It is undisputed that she lived with her mother after her parents divorced. When her mother relocated, Ms. Drexler immediately moved in with her grandparents. She *never* lived with her father and, accordingly, she is not entitled to coverage under Phoenix's policy. Therefore, the court will grant Phoenix's motion for summary judgment on this issue.

*B. State Farm's Motion for Summary Judgment*

Ms. Drexler's mother maintained coverage with State Farm which also included underinsured motorist benefits. The relevant language is as follows:

"***Insured*** - means the ***person*** or ***persons*** covered by uninsured motor vehicle coverage.

This is:

1. The first ***person*** named in the declarations;
2. His or her ***spouse***;
3. Their ***relatives***; . . ."

*State Farm's Reply* (DN 29)*, Exhibit 1*, *Section III*, p. 11 (emphasis in original). Ms. Drexler is not

---

[3] In Ms. Drexler's own words, she merely "***visited with*** [her] father about 2-3 times a week while ***living with*** [her] grandparents." *Affidavit of Daniel Drexler*, ¶ 4.

6

the person named in the declarations nor is she the spouse of such person. Therefore, whether she is "insured" under this policy depends upon whether she qualifies as a "relative." The court must examine the contract, giving effect to its express terms. *See Foster v. Kentucky Housing Corp.*, 850 F.Supp. 558, 561 (E.D. Ky. 1994) (citing *Hendrix v. Fireman's Fund Ins. Co.*, 823 S.W.2d 937, 938 (Ky.Ct.App. 1992)) ("the terms of an insurance policy are enforced as drawn"). The policy explicitly defined the term as follows:

> ***Relative*** - means a ***person*** related to ***you*** or ***your spouse*** by blood, marriage or adoption who resides primarily with ***you***. It includes ***your*** unmarried and unemancipated child away at school.

*State Farm's Reply* (DN 29), *Exhibit 1*, p. 3 (emphasis in original). The policy does not define the phrases "who resides primarily with you" or "away at school." The court will, therefore, rely upon the terms' "ordinary meaning as persons with the ordinary and usual understanding would construe them." *City of Louisville v. McDonald*, 819 S.W.319, 320 (Ky. App.1991). *Black's Law Dictionary* defines "reside" as follows:

> Live, dwell, abide, sojourn, stay, remain, lodge . . . To settle oneself or a thing in a place, to be stationed, to remain or stay, to dwell for a time, to have one's residence or domicile; specifically, to be in residence, to have an abiding place . . .

*Black's Law Dictionary* 1176 (5th ed. 1979). It defines "primary" as:

> First; principal; chief; leading. First in order of time, or development, or in intention.

*Id.* at 1071. Applying the ordinary meaning of these terms, we find that Ms. Drexler was not "primarily residing" with her mother in Oklahoma. Her mother had agreed to transfer custody to Ms. Drexler's father and to name the paternal grandparents as her legal guardians. *See State Farm Motion for Summary Judgment* (DN 21), *Exhibit 2 - Agreed Order, Hardin Circuit Court, Division*

7

*One, Civil Action No. 92-CI-1162*. The ordinary meaning of the term "reside" implies some regular habitation, as evidenced by the above definition. There is no evidence that Ms. Drexler intended to "dwell" or "stay" in Oklahoma at the time of the accident.[4] On the contrary, all the evidence points to the opposite conclusion. Ms. Drexler desired to continue residing in Kentucky, living with her grandparents so that she could finish her high school years in Elizabethtown. *Affidavit of Daniele Drexler*, ¶¶ 2-3. Ms. Drexler indicates that she visited her mother over the holidays and on limited other occasions while she was living with her grandparents. She also informs the court that she lived with her mother in Illinois[5] after her graduation from high school. However, these events occurred subsequent to the accident and are therefore irrelevant to the question of what coverage existed at the time of the accident.

Moreover, the State Farm policy language is quite restrictive. Even assuming that Ms. Drexler could establish she had dual residences in Kentucky and Oklahoma, she still would not be covered under her mother's policy because she "primarily resided" with her grandparents. The term "primary" is synonymous with "principal" or "chief", as evidenced by the above definition. Ms. Drexler lived with her grandparents for the majority of the year. She indicated that she visited her mother on holidays and some "other times." She estimated that she traveled to Oklahoma only 6-10 times per year. *Daniele Drexler Affidavit*, ¶5. It would be an unreasonable interpretation, contrary to the meaning of the term "primarily," to say that she "primarily resided" with her mother when the vast majority of her time was spent living with her grandparents in another state.

---

[4] In fact, there is no evidence that Ms. Drexler had ever visited her mother in Oklahoma before the accident.

[5] At some point after the accident, Ms. Drexler's mother moved to Illinois.

8

While Ms. Drexler did not "primarily reside" in Oklahoma at the time of the accident, she may still be covered under State Farm's policy if she is characterized as a "child away at school." State Farm indicates that, because there is no Kentucky case law on point, it relies upon an Eighth Circuit Court of Appeals decision as persuasive authority for its position. The court finds *Crump v. State Farm Mut. Ins. Co.*, 961 F.2d 725 (8th Cir. 1992) particularly instructive because it involved a policy containing language identical to the provisions at issue here. *See id.* at 276. The *Crump* court determined the natural meaning of the phrase "away at school" to be "away from home" rather than "away from the city where home is located."[6] *Id.* at 727. Using this interpretation, Ms. Drexler was not covered as a child "away at school." As discussed above, her mother's residence in Oklahoma was not Ms. Drexler's "home". *Black's Law Dictionary* defines "home" as:

> One's own dwelling place; the house in which one lives; especially the house in which one lives with his family; the habitual abode of one's family; a dwelling house . ..; That place which one in fact resides with the intention of residence, or in which he has so resided, and with regard to which he retains residence or to which he intends to return. Place where a person dwells and which is the center of his domestic social and civil life.

*Black's Law Dictionary* 660 (5th ed. 1979). Ms. Drexler and her mother lived in Kentucky for at least 10 years. When her mother decided to move to Oklahoma, Ms. Drexler did not go with her. She never established her "home" there. Instead, she chose to stay with her grandparents, exhibiting a clear intent to maintain her "home" in Kentucky. In fact, the record contains no evidence that Ms. Drexler ever went to her mother's residence in Oklahoma before the accident. There is no evidence that Oklahoma was her "dwelling place" or "habitual abode." She could not "intend to return" to a

---

[6] In *Crump*, the outcome turned on whether a son who was living in an apartment while attending college in the same city where his mother lived was covered as a "child away from home." The *Crump* court concluded that the son was covered, noting that he was away from the home where he had lived with his mother before attending college.

place where she had never lived and Oklahoma was certainly not "the center of h[er] domestic, social, and civil life." Ms. Drexler was not covered as a "child away at school." Since she was not an "insured" under the policy, the court will grant State Farm's motion for summary judgment on this issue.

*C. Northern's Motion for Summary Judgment*

Northern issued a precision portfolio policy containing a business auto coverage form, which identified the "named insured" as "Drexler Construction Co. - Gold City Homes, Inc." The underinsured portion identified only automobiles owned by the "named insured" as "covered autos." *See Northern's Motion for Summary Judgment, Exhibit 2 - Precision Specialty Contractors Residential General Contractors Program Business Auto Declarations Form*, p. 2. However, the "named insured" purchased broadened coverage ("drive other car coverage") for both of Ms. Drexler's grandparents. This additional coverage contained a separate provision for underinsured motorist coverage. The relevant language follows:

> **Changes in Auto Medical Payments And Uninsured And Underinsured Motorists Coverage**s
>
> The following is added to **Who Is An Insured**:
>
> Any individual named in the Schedule and his or her "family members" are "insured" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except: Any "auto" owned by that individual or by an "family member".

*Plaintiff's Response to Northern's Motion for Summary Judgment* (DN 27)*, Exhibit 3 - Drive Other Car Coverage,* ¶ C (hereinafter "Drive Other Car Coverage") (emphasis in original). The supplemental coverage specifically defines "family member" as used in the endorsement.

> "Family member" means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household,

10

including a ward or foster child.

*Id.* at ¶ E. The relevant provisions cited above apply to Ms. Drexler's grandparents as "individual[s] named" in the supplemental coverage. The provision for underinsured motorist coverage and the definition of "family member" are both contained in the Drive Other Car Coverage.

However, Northern directs the court to the "Kentucky Underinsured Motorist Coverage" form, which applies only to "covered autos," referring to the six vehicles listed in the business auto coverage form. *Northern's Motion for Summary Judgment*, p.6-7 (referencing *Exhibit 2, Kentucky Underinsured Motorist Coverage,* p. 1 of 3). Seizing on language in that portion of the policy, Northern argues that Ms. Drexler is not an "insured" as defined therein because the corporation, as the "named insured" cannot have a "family member."[7]

However, Ms. Drexler does not claim coverage under the language cited by Northern. Rather, she claims to be insured under the supplemental policy as a "family member" of an "individual" named in that portion of the policy. *See Plaintiff's Response* (DN 27), p.3-6 (referencing *Drive Other Car Coverage* form). The endorsement clearly states that it "*modifies* insurance provided under . . . [the grandparents'] Business Auto Coverage Form." *Drive Other Car Coverage,* p. 1 of 2 (emphasis added).

The supplemental coverage also contains a schedule identifying the "named individuals" as well as other information. *See id. at* p. 1 of 3. The schedule includes sections – which were left blank in the case at bar – where information regarding the "name of the individual," the "limit" and

---

[7] This section of the policy defined "family members" as blood relatives residing in the same household as the "named insured." *See Kentucky Underinsured Motorist Coverage,* p. 3 of 3. *Compare Drive Other Car Coverage,* ¶ E (defining family members as blood relatives residing in the same household as "the individual named in the schedule").

"premium" for "liability," "auto medical payments," "uninsured motorists" and "underinsured motorists" and the "comprehensive" and "collateral" "physical damage" was to be supplied. Excluding the premium amount, this information mirrors that contained in the "Supplemental Declarations" page, which identifies both grandparents as covered "individuals."[8] The schedule itself indicates that "[i]f no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." Thus, it is clear that the term "Declarations" refers to the "Supplemental Declarations" page, which already contained the exact information necessary to complete the form. Furthermore, the Supplemental Declarations form indicates that each "named individual" had underinsured coverage pursuant to endorsement number CA99101001. Coverage provided under this endorsement number is found on the pages titled "Drive Other Car Coverage," which include the schedule discussed above.[9]

Thus, the controlling issue is whether Ms. Drexler is a "family member" of "[a]ny individual named in the Schedule," as prescribed by the relevant policy language. *See Drive Other Car Coverage,* ¶ C. She certainly meets the first part of the definition as a blood relative of her paternal grandparents. She also satisfies the second part. She was a member of the grandparents' "household." As discussed earlier in Phoenix's motion for summary judgment, the Kentucky courts have defined "household" as "living together as a family under the same roof." *See Sutton v. Shelter Mut. Ins. Co.*, 971 S.W.2d 807, 808 (Ky. App. 1997). There is no dispute that Ms. Drexler was

---

[8] *See Plaintiff's Response, Exhibit 2 - Precision Policy Supplemental Declarations Precision Speciality Contractors Residential General Contractors Program* (hereinafter "Supplemental Declarations").

[9] The endorsement number on the form referenced by Northern – CA21790401 – differs. Northern's argument regarding whether a corporate entity can have "family members" is not relevant to the situation at bar.

12

living at her grandparents' house at the time of the accident. Her parents agreed to name her grandparents as guardians and specifically chose to have Ms. Drexler move in with them because they resided in the school district where she wanted to finish high school. Since Ms. Drexler was covered as a "family member" of the named "individual" under her grandparents' supplemental policy, the court will deny Northern's motion for summary judgment on the coverage claim.

## *II. Kentucky Unfair Claims Settlement Practice Act*

In addition to the claims seeking underinsured motorist coverage under the three policies, Ms. Drexler has alleged that each defendant violated the Kentucky Unfair Claims Settlement Practices Act. Therefore, she seeks punitive damages from each insurance carrier. The relevant statute requires an insurance company to "effectuate a prompt, fair and equitable settlement of claims in which liability has become reasonably clear." *See* Ky. Rev. Stat. §304.12-230.

To pursue a bad faith claim against an insurer in Kentucky, whether common law or statutory, the plaintiff must establish that the insurer: (1) was obligated to pay; (2) lacked a reasonable basis in law or fact for denying claim; and (3) either knew there was no reasonable basis for denying claim, or acted with reckless disregard for whether such a basis existed. *See Graham v. Gallant Ins. Group*, 60 F.Supp.2d 632, 635 (W.D.Ky. 1999) (internal citations omitted). In the instant case, neither Phoenix nor State Farm was obligated to pay because Ms. Drexler was not entitled to coverage as an "insured" under the relevant policy terms. Accordingly, the court will grant Phoenix's and State Farm's motions for summary judgment on the bad faith claims.

With regard to Northern's motion, it is premature to consider summary judgment on the bad faith claim. We have determined that Ms. Drexler was covered under her grandparents' policy. The issue will therefore revolve around whether there was a reasonable basis for denying the claim and,

13

if not, whether Northern knew it there was no reasonable basis or acted recklessly. Therefore, the court will deny Northern's motion for summary judgment on the bad faith claim with leave for the parties to refile and reargue in light of our finding of coverage under the policy.

A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record